IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRANDON BERKENFELD, BARBARA HOLLAND-EYTAN, and SANDRA RICKI DIAMOND | * * * * * | |
| v. | * | Civil No. PX-16-1227 |
| | * * | |
| GARY R. LENET and MORGAN STANLEY & CO., LLC | * * * | |

********

**MEMORANDUM**

Plaintiffs Brandon Berkenfeld, Barbara Holland-Eytan, and Sandra Ricki Diamond bring this lawsuit against defendants Gary R. Lenet and Morgan Stanley & Co., LLC seeking damages for alleged negligence, breach of fiduciary duty, and professional negligence. Now pending is Defendants' Motion for Summary Judgment, ECF No. 47. The parties have fully briefed the motion, and no hearing is necessary. *See* Local R. 105.6. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED.

**BACKGROUND**

This dispute arises out of Gary R. Lenet's ("Lenet") and Morgan Stanley & Co., LLC's ("Morgan Stanley") alleged negligence in advising Brandon Berkenfeld ("Berkenfeld"), Barbara Holland-Eytan ("Holland-Eytan"), and Sandra Ricki Diamond ("Diamond") about their options for annuity disbursements. ECF No. 2 at ¶¶ 3-10. Defendant Lenet is an employee of defendant Morgan Stanley. ECF No. 47 at 4. Lenet was an investment advisor for plaintiffs Berkenfeld, Holland-Eytan, and Diamond. *Id.* At issue is Lenet's advice to Plaintiffs regarding their

distribution options for two annuities of which Plaintiffs were equal beneficiaries. ECF No. 2 at ¶¶ 2–4.

Plaintiffs are the daughters and grandson of Claire Blumberg ("Blumberg"), who passed away in February 2014. ECF No. 2 at ¶ 3. Prior to Blumberg's passing, Blumberg owned annuities issued by Lincoln Financial ("Lincoln") and Commonwealth/Scudder ("Commonwealth"). ECF No. 47 at 3. When Blumberg died, each plaintiff elected a lump-sum distribution for the annuities. ECF Nos. 47-17 & 47-18. Each plaintiff also elected not to have federal income tax withheld from their lump sum distributions. ECF Nos. 47-17 & 47-18. If Plaintiffs had elected different distribution options, they could have saved in excess of $200,000 in overall tax liability. ECF No. 2 at ¶ 9. Plaintiffs allege they elected lump-sum distributions because Lenet advised them that lump-sum distribution was the only distribution option. ECF No. 2 at ¶¶ 4–6.

No contract or agreement existed between the parties obligating Defendants to give tax advice or an opinion concerning Plaintiffs' available distribution options. ECF No. 47 at 7. Plaintiffs, however, claim that Lenet lump-sum distribution advice was an opinion, the error of which is actionable. ECF No. 2 at ¶ 5. Plaintiffs also aver that Lenet advised Plaintiffs to seek independent tax advice concerning their distribution options. ECF Nos. 2 at ¶ 8. Plaintiffs did not seek such advice despite having financial advisors and tax experts at their disposal. *See* ECF Nos. 2 at ¶ 8 & 47-2, Berkenfeld Tr. at 243:4-10).

Plaintiffs also did not contact Lincoln or Commonwealth to discuss their options. ECF No. 47-2, Berkenfeld Tr. at 197:21-22, 198:1-2, 228:16-22; ECF No. 47-5, Holland-Eytan Tr. at 151:21-22, 152:1-9, 184:9-13; ECF No. 47-9 at No. 17. Each plaintiff also signed a statement for each annuity electing a lump-sum disbursement which expressly notified them of all

available distributions. ECF Nos. 47-17 & 47-18.[1]  *Id.*  Plaintiffs additionally elected not to have federal income tax withheld from their lump-sum distributions despite having been warned in writing, "If you opt out of tax withholding, you are still liable for applicable taxes on your distribution . . . .You may want to discuss your withholding election with a qualified tax advisor."  ECF No. 47-17 at 7.

Plaintiffs filed suit in the Circuit Court for Baltimore City on February 25, 2016, alleging against Lenet negligence (Count I), breach of fiduciary duty (Count II), and professional negligence (Count III), and vicarious liability against Morgan Stanley. ECF No. 2.  Defendants removed the case to this Court on April 25, 2016.  ECF No. 1.  On May 2, 2016, defendants filed a motion to dismiss.  ECF No. 6.  This court denied that motion on January 23, 2017.  ECF No. 37.  Defendants moved for summary judgment on September 25, 2017.  ECF No. 47.

## STANDARD

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986).  A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When reviewing a motion for summary

---

[1] The statements for the Lincoln annuity disclosed eight distribution options.  ECF No. 47-17. The statements for the Commonwealth annuity disclosed five distribution options.  ECF No. 47-18.

judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)); *see also Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 160 (1970). A court should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's case, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322.

## ANALYSIS

### I. Negligence (Count I) and Professional Negligence (Count III)

Defendants argue that summary judgment is warranted because no reasonable trier of fact could find in Plaintiffs' favor on these counts. Alternatively, Defendants argue that even if they were negligent, Plaintiffs' contributory negligence and assumption of the risk bar recovery. Although genuine disputes of fact exist regarding Defendants' negligence, the evidence construed in the light most favorable to Plaintiffs demonstrate that their claims are nonetheless barred under the doctrine of contributory negligence.[2] The Court first addresses the negligence claims.

---

[2] The Court need not and does not reach whether Plaintiffs' assumption of the risk bars recovery.

To establish a cause of action for negligence, a plaintiff must prove (i) the defendant owed a duty to the plaintiff, (ii) defendant breached that duty, (iii) a causal relationship between the breach existed and the harm plaintiffs suffered, and (iv) damages. *Balfour Beatty Infrastructure, Inc. v. Rummel Klepper & Kahl, LLP*, 226 Md. App. 420, 438 (2016); *Shofer v. Stuart Hack Co.*, 124 Md. App. 516, 528 (1999). The elements are the same to establish a cause of action for professional negligence, except that a professional is held to the prevailing standard of care in his or her profession. *Balfour Beatty*, 226 Md. App. at 438.

### a. Duty

First, the plaintiff must show the defendant owed the plaintiff a duty of care. *Balfour Beatty*, 226 Md. App. at 438. The Maryland Court of Appeals has instructed that the existence of a duty turns on "the nature of harm likely to result from a failure to exercise due care, and the relationship that exists between the parties." *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534 (1986). Whether a duty exists also "represents a policy question of whether the specific plaintiff is entitled to protection from the acts of the defendant." *Premium of America, LLC v. Sanchez*, 213 Md. App. 91, 108 (2013) (citing *Gourdine v. Crews*, 405 Md. 722, 745 (2008)).

Where damages are exclusively economic, Maryland courts generally require "an intimate nexus between the parties." *Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 658 (2000). The intimate nexus can be satisfied by either contractual privity or its equivalent. *Id.* In the context of accountant liability to non-contractual parties, the Maryland Court of Appeals has adopted the approach followed by New York courts. Under this approach, accountants may be liable for negligence to non-contractual parties when "they are aware that the financial reports they prepare are to be used for a particular purpose or purposes, that a known party or parties are intended to rely on those reports for that purpose or purposes and they have a

relationship with that party that indicates that they understand the party's reliance." *Katz*, 361 Md. at 690 (citing *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985)). To hold a professional liable for negligence in this scenario, there must be "some connection [between the plaintiff and defendant]" equivalent to privity, "such as knowledge of [the plaintiff's] reliance." *Katz*, 361 Md. at 693.

The evidence viewed most favorably to Plaintiffs establishes that Lenet owed them a duty as Plaintiffs' financial advisor. ECF Nos. 47 at 4–7 & 47-2, Berkenfeld Tr. at 170:1-22. Lenet had also served as Blumberg's financial planner for many years before advising Plaintiffs. ECF No. 47-29 at 2. As a consequence of this role, Lenet was on notice that Plaintiffs would rely on his advice, which triggered a duty of care under *Katz* to exercise the skill and knowledge normally possessed by members of [his] profession or trade. *Katz*, 361 Md. at 693; *see also Balfour Beatty*, 130 Md. App. at 1034.

### b. Breach

Second, a plaintiff must prove the defendant breached a duty of care. *Balfour Beatty*, 226 Md. App. at 438. In general, "a duty is breached when a person or entity fails to conform to an appropriate standard of care." *Troxel v. Iguana Cantina, LLC*, 201 Md. App. 476, 501 (2011). A plaintiff must show that the defendant "failed to exercise that degree of care which a reasonably prudent [person] would have exercised under the same or similar circumstances." *Jacques*, 307 Md. at 544.

In the context of professional negligence, "a party is presumed to have acted with due skill and care and a party alleging otherwise bears the burden of overcoming that presumption." *Malinowski v. Lichter Group*, 165 F. Supp. 3d 328, 337 (2016) (citing *Bd. of Trs. v. Patient First Corp.*, 444 Md. 452 (2015)). Customarily, expert testimony is required to establish the

professional's requisite standard of care which is often "'beyond the ken of the average layman,' such that the expert's testimony is necessary to elucidate the relevant standard for the trier of fact." *Schultz v. Bank of America, N.A.*, 413 Md. 15, 28 (2010) (quoting *Rodriguez v. Clarke*, 400 Md. 39, 71 (2007)). That said, where the alleged act of negligence is such that the trier of fact could plainly recognize it as negligence, expert testimony is not required. *Schultz*, 413 Md. at 29.

At the summary judgment stage, sufficient evidence certainly exists to establish Lenet's breach, both as to an ordinary duty of care and his duty of care as a professional financial advisor. Plaintiffs testified in deposition that Lenet erroneously advised the lump sum distribution to be the only disbursement option. *See, e.g.*, ECF No. 47-2, Berkenfeld Tr. at 233:12-16. An email exchange between Berkenfeld and Defendant Lenet dated June 18, 2015 further corroborates Plaintiffs' testimony. *See* ECF No. 50 at Ex. D. Berkenfeld asked Lenet, "Did I have an option not to take all of [Blumberg's] money at once? And if I did why did we? [My accountant] said I could have saved almost $100k (in taxes) if we had taken it over long time or left it in there if I needed until I needed it." *Id.* Lenet responded that "if any of the monies would have been in an IRA then yes we could have deferred over 5 years. All of the annuities were owned by her personally (non-qualified) and we couldn't differ [sic] over a five year period." *Id.* Viewed in the light most favorable to the Plaintiffs, this email exchange confirms Plaintiffs' claim that Lenet erroneously advised them they had only one disbursement option.

Further, Lenet's advice did not conform to the standard of care that he owed to Plaintiffs. Even without expert testimony, it is clear that the professional standards of care required Lenet to research Plaintiffs' disbursement options and advise them accordingly. The selection forms that

Plaintiffs had filled out to elect a lump sum disbursement plainly listed numerous other options. ECF Nos. 47-17 & 47-18. Lenet would have known of these disbursement alternatives just by reading these forms. When viewed in the light most favorable to Plaintiffs, therefore, the evidence demonstrates that even without expert testimony as to Lenet's professional standard of care, Lenet's erroneous advice was negligent.

      **c. Causation**

Third, Plaintiffs must show defendants' breach proximately caused the alleged harm. *Balfour Beatty*, 226 Md. App. at 438; *see also Stone v. Chicago Title Ins.*, 330 Md. 329, 337 (1993). Proximate causation requires a plaintiff to demonstrate that a defendant's negligent acts or omissions were both a cause in fact and a legally cognizable cause of a plaintiff's injuries. *Atlantic Mut. Ins. Co. v. Kenney*, 323 Md. 116, 127 (1991). Causation-in-fact centers on whether the alleged wrongdoing was the but-for cause of plaintiff's injury, *Pittway Corp. v. Collins*, 409 Md. 218, 244 (2009) (citations omitted), and legal causation focuses on whether the injuries suffered were a foreseeable result of the negligent conduct. *Id.* at 246.

Again, the evidence construed most favorably to Plaintiffs establishes causation. Plaintiffs have shown that but for Lenet's advice, Plaintiffs would not have chosen the lump sum distribution option, establishing causation-in-fact. It is likewise foreseeable that Plaintiffs would rely on the advice of their trusted financial advisor, the result of which was greater tax liability than that associated with the other distribution options.

In this regard, and contrary to Defendants' position, *Shofer v. Stuart Hack Co.*, 124 Md. App. 516 (1999) is inapposite. *Shofer* involved a plaintiff seeking the advice of defendant pension plan administrator after the plaintiff supplied defendant with woefully incomplete information as to the nature and extent of the proposed transactions. *Id.* at 532. The defendant's

advice was not based on plaintiff's actual intended transactions, but on piecemeal and hypothetical information. Accordingly, the Court affirmed the trial court's determination that defendant's erroneous advice, based on an anticipated course of conduct not taken by plaintiff, could not foreseeably result in plaintiff suffering tax consequences, and thus could not be the proximate cause of Plaintiff's losses. *Id.* at 533. This is not the case here. Lenet knew or should have known of Plaintiffs' distribution options, and advising Plaintiffs that a lump sum distribution was the only option would foreseeably cause the eventual financial harm. Summary judgment is therefore properly denied on proximate causation.

### d. Damages

Defendants do not dispute plaintiffs' damages to be in excess of $287,435.00. ECF No. 2 at ¶ 14. Thus, Plaintiffs have established the prima facie case of negligence against Lenet directly and vicariously as to Morgan Stanley. Summary judgment is nonetheless warranted because no reasonable trier of fact could dispute that Plaintiffs' were contributorily negligent.

## II. Contributory Negligence

Contributory negligence is a plaintiff's "failure to observe ordinary care for one's own safety. It is the doing of something that a person of ordinary prudence would not do, or the failure to do something that a person of ordinary prudence would do, under the circumstances." *Union Memorial Hosp. v. Dorsey*, 125 Md. App. 275, 282 (1999) (quoting *Menish v. Polinger Co.*, 277 Md. 553, 559 (1976)). Contributory negligence under Maryland law acts as a complete bar to recovery. *Id.* Generally the trier of fact, not the Court, determines whether a plaintiff is contributorily negligent. *Cambpell v. Baltimore Gas and Elec. Co.*, 95 Md. App. 86, 93 (1993). However, summary judgment is appropriate where the evidence shows "some prominent and decisive act which directly contributed to the accident and which was of such a character as to

leave no room for difference of opinion thereon by reasonable minds." *Baltimore Gas and Elec. Co. v. Flippo*, 348 Md. 680, 703 (1998) (quoting *Reiser v. Abramson*, 264 Md. 372, 378 (1972)). This act "must reveal that the injured party was or should have been aware of a dangerous situation and failed to exercise ordinary care to protect himself." *Dorsey*, 125 Md. App. at 283 (citation omitted).

This case is one in which no room for difference of opinion exists as to Plaintiffs' contributory negligence. First, it is undisputed that two Plaintiffs had years of prior experience with annuities similar to the Lincoln and Commonwealth annuities. Holland-Eytan owned such an annuity at the time she selected a lump sum disbursement option on the Lincoln and Commonwealth annuities. ECF No.47-5, Holland-Eytan Tr. at 41–42. Similarly, Diamond owned an annuity from Prudential, the prospectus of which explained the multiple distribution options available to death beneficiaries. ECF No.47-6. Additionally, even before Blumberg passed away, Berkenfeld and Diamond had access to the Lincoln and Commonwealth annuities documents and contracts which expressly described distribution options in addition to the lump sum distribution. ECF No. 47-11. Plainly, Plaintiffs ignored this readily available information.

After Blumberg passed away, it is further undisputed that Plaintiffs failed to exercise ordinary care to make prudent investment choices. Despite Lenet expressly telling Plaintiffs to obtain independent tax advice before electing a lump sum distribution, Plaintiffs never did so, even though Plaintiffs had at their disposal these very professionals on whom they often relied in the past. ECF Nos. 2 at ¶ 8 & 47-2, Berkenfeld Tr. at 243:4-10. Plaintiffs also failed to inquire of their disbursement options with the annuity companies. ECF No. 4-2, Berkenfeld Tr. at 197:21-22, 198:1-2, 228:16-22; ECF No. 47-5, Holland-Eytan Tr. at 151:21-22, 152:1-9, 184:9-13; ECF No. 47-9. Indeed, Plaintiff Berkenfeld readily admitted that had he contacted the

companies or consulted his other financial and tax advisors, he would have learned of their other disbursement options, and that failing to do so was imprudent. ECF No. 47-2, Berkenfeld Tr. at 243:4-18, 232:9-16.

Perhaps most egregiously, the election forms which Plaintiffs used to select a lump sum distribution clearly identify all other distribution alternatives and required that Plaintiffs "select one." ECF Nos. 47-17 & 47-18. The Lincoln forms also state, in bold typeface at the outset, "Instructions – important information – please read carefully and completely." Plaintiffs were required to execute these documents as a precondition to receiving the distribution. Undoubtedly, had Plaintiffs exercised due care and read these forms, they would have known of alternative distribution options. Accordingly, any failure to read these documents, as Berkenfeld himself admits, was "imprudent." ECF No. 47-2, Berkenfeld Tr. at 216–217.[5] No reasonable finder of fact could ignore that Plaintiffs' own dereliction in failing to read the relevant forms and seek advice on the tax implications of their decisions contributed to their losses. Accordingly, Plaintiffs cannot recover from Lenet as a matter of law.

### III. Breach of Fiduciary Duty (Count II)

Defendants' motion for summary judgment is also granted as to Count II, breach of fiduciary duty. Although breach of a fiduciary duty may support a negligence or breach of contract claim, it is not a standalone cause of action. *See Int'l Bhd. of Teamsters v. Willis Corroon Corp.*, 369 Md. 724, 741 n.1 (2002) ("although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or contract, Maryland does not recognize a separate tort action for breach of fiduciary duty"). Plaintiffs' breach of fiduciary duty allegations are

---

[5] Berkenfeld testified he did not read the documents, and Holland-Eytan testified she did not know whether she reviewed them. (ECF Nos. 47-2, Berkenfeld Tr. at 216:18-20 & 47-5, Holland-Eytan Tr. at 168:17-20).

subsumed in the negligence and professional negligence counts for which summary judgment is granted.  Count II is dismissed because no independent cause of action for breach of fiduciary duty can proceed.

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment (ECF No. 47) is granted.  A separate Order follows.

|  1/4/2017  |  /s/  |
|---|---|
| Date | Paula Xinis |
|  | United States District Judge |